Matter of Sarah I. v Ian J. (2024 NY Slip Op 06408)

Matter of Sarah I. v Ian J.

2024 NY Slip Op 06408

Decided on December 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

CV-23-2182
[*1]In the Matter of Sarah I., Respondent,
v
Ian J., Appellant. (And Two Other Related Proceedings.)

Calendar Date:November 15, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, Fisher and Powers, JJ.

Sandra M. Colatosti, Albany, for appellant.
Michelle I. Rosien, Philmont, for respondent.
Christopher J. Obstarczyk, Latham, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Saratoga County (Paul Pelagalli, J.), entered October 24, 2023, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2007). A July 2019 order entered upon the parties' consent granted the parties joint legal custody of the child, with the father having primary physical custody and the mother having certain specified parenting time. In November 2022, while with the mother, the child refused to return to the father's residence and asserted that she suffered abuse at the hands of the father's wife (hereinafter the stepmother). Since that time, the child has remained in the mother's home, but has briefly visited with the father on a few occasions.
The mother thereafter filed a modification petition seeking sole physical custody — with joint legal custody continuing — predicated on the child's refusal to return to the father's home. Several days later, the father filed a petition seeking to enforce the prior order and a modification petition seeking to have sole legal and physical custody of the child, with supervised parenting time to the mother. Following a fact-finding hearing and a Lincoln hearing, Family Court found that the mother demonstrated a change in circumstances and that the child's best interests would be served by an award of primary physical custody to her, with the father having parenting time subject to mutual agreement of the parties, taking the child's wishes into account, as well as therapeutic parenting time; the joint legal custody arrangement was continued. Family Court further found that the father did not present clear and convincing evidence that the mother violated the prior order and dismissed the father's enforcement petition. The father appeals.
The father contends that Family Court erred in awarding the mother primary physical custody because she failed to show that it was in the child's best interests. The father also contends that Family Court abused its discretion in delegating its authority to the child to determine the father's visitation rights. As it is undisputed that a change in circumstances occurred based upon the child's refusal to return to the father's home, the only issue before us is whether the child's best interests are served by the court's order. "In making a best interests determination, Family Court must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Michelle L. v Steven M., 227 AD3d [*2]1159, 1161 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1103 [3d Dept 2021). "Furthermore, the preference of a child of advanced age as to who to live with is entitled to great weight" (Matter of Daniel G. v Marie H., 196 AD3d 801, 804 [3d Dept 2021] [citations omitted]; see Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1167 [3d Dept 2020]).
At the fact-finding hearing, the mother testified that she and the father followed the July 2019 order from its entry date to November 2022, when the child refused to return to the father's residence due to alleged abuse by the stepmother. The mother testified that, on the day the child refused to return to the father, she called the police because she knew she would be in violation of the prior order. Indeed, upon their arrival, the police advised her that she was in violation of the prior order. One of the police officers spoke with the child and, after doing so, advised the mother to file a child protective services' report. Since then, the mother testified that the child had only seen the father on two or three occasions. The mother explained that she has continuously encouraged the child to communicate with the father and has even succeeded in getting the child to unblock the father's phone number. The mother stated that she is willing to cooperate with the father to help repair the relationship between the child and the father because she believes the child should have a relationship with him. Yet, despite the mother's previous attempts to communicate with the father, the mother testified that the conversation broke down due to threats made by the stepmother. The mother further testified that, although she has never seen the stepmother abuse the child, the child does not feel safe around her. According to the mother, she has not been able to coparent with the father for 2½ years because he allows the stepmother to be involved with coparenting efforts. The mother testified that she prefers not to have any contact with the stepmother, but wishes to have verbal contact with the father to coparent. Family Court found the mother to be a credible witness.
The father testified that he filed an enforcement petition in November 2022 because the mother was interfering with his discipline of the child. The father testified that he had disciplined the child by taking away her phone until the end of the school year because she was filming TikTok videos when she was supposed to be in class. The father explained that, to discipline the child, he usually takes her phone away for a week as punishment. While this punishment was significantly longer, he did intend to give the child back her phone after a month if she did her schoolwork. However, he did not communicate this to the child. The father testified that three to five days after the child was grounded she refused to come back to the father's residence. The father also testified that the [*3]stepmother is involved in the parenting of the child. He has never witnessed the stepmother engage in corporal punishment and did not agree that the child had a bad relationship with her. In fact, he believed the child's allegations of abuse by the stepmother were fabricated and that he did not learn of these allegations until the night the child refused to return to his home. The father further testified that the child still communicates with the stepmother. The father testified that he believes the child seeks to stay with the mother to escape discipline from the father. Family Court found that the father was "at times" a credible witness and, at other times, was not.
Based on the foregoing, Family Court did not err in awarding the mother primary physical custody. Perhaps most significantly, the court found credible the mother's testimony that the child suffered from an abusive relationship with the stepmother. Moreover, the court did not find any evidence to support the father's contention that the child only wishes to reside with the mother due to a lack of discipline the child receives while in the mother's custody. Further, the record reflects that the court "gave due consideration to the child[ ]'s preferences" (Matter of Michael Q. v Peggy Q., 179 AD3d 1329, 1332 [3d Dept 2020]). "After considering this proof, and according deference to the credibility and factual determinations of Family Court, we are satisfied that a sound and substantial basis in the record exists for the conclusion that it is in the best interests of the child for her to primarily reside with the [mother]" (Matter of Anthony YY. v Emily ZZ., 189 AD3d 1924, 1925 [3d Dept 2020] [citations omitted]; see Matter of Zachery VV. v Angela UU., 192 AD3d 1220, 1223 [3d Dept 2021]).
Nor do we find merit to the father's contention that Family Court improperly delegated its authority to set a parenting time schedule to the child. The relevant portion of the order states that "the [f]ather shall have parenting time with the child as the parties shall mutually agree, taking into consideration the child's wishes." We do not find that this delegates its authority regarding parenting time to the child (compare Matter of Cecilia BB. v Frank CC., 200 AD3d 1411, 1416 [3d Dept 2021]), especially given that this provision only requires that the child's wishes be considered, rather than giving the child final say (compare Matter of Laura E. v John D., 216 AD3d 1274, 1274, 1277 [3d Dept 2023]). Moreover, "[a]lthough a court cannot delegate its authority to determine visitation to either a parent or a child, it may order visitation as the parties may mutually agree so long as such an arrangement is not untenable under the circumstances" (Matter of Ballard v Piston, 178 AD3d 1397, 1399 [4th Dept 2019] [internal quotation marks, brackets, ellipsis and citation omitted], lv denied 35 NY3d 907 [2020]; see Matter of Nicolette I. [Leslie I.], 110 AD3d 1250, 1255 [3d Dept 2013]). Indeed, while the testimony [*4]of the mother and the father demonstrated some difficulty in coparenting, the mother testified to wanting the father and the child to have a good relationship and explained how she has tried to facilitate that. One example of this is the mother's testimony that she encouraged the child to unblock the father on the child's cell phone, which the child did do. Moreover, although the child has refused to go to the father's home for previously scheduled parenting time, she has spent time with him on multiple occasions of her own accord. Finally, the court's order of therapeutic parenting time will allow the father and the child to rebuild their relationship. As such, given this history, as well as the fact that the child, at the time of this decision, is approximately one year away from her 18th birthday, we do not find this flexible parenting time provision to be inappropriate (see Matter of Pierce v Pierce, 151 AD3d 1610, 1611 [4th Dept 2017], lv denied 30 NY3d 902 [2017]; Matter of Alleyne v Cochran, 119 AD3d 1100, 1101-1102 [3d Dept 2014]; compare Matter of Nicolette I. [Leslie I.], 110 AD3d at 1255). Accordingly, we decline to disturb this provision of Family Court's order.
Finally, deferring to Family Court's credibility assessments as we must, we are unpersuaded by the father's assertion that Family Court abused its discretion in dismissing his enforcement petition (see Matter of Jason VV. v Brittany XX., 230 AD3d 1398, 1402 [3d Dept 2024]; Matter of Craig K. v Michelle K., 218 AD3d 977, 980 [3d Dept 2023]).
Egan Jr., J.P., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.